**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONENCTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| CONNECTICUT TRADE | : | CHAPTER 11 |
| COMPANY, INC. d/b/a | : | |
| Connecticut Greenstar | : | CASE NO. 13-51044 (AHWS) |
| | : | |
| Debtor | : | |
| _____ | : | |
| | : | |
| CONNECTICUT TRADE | : | |
| COMPANY, INC. d/b/a | : | |
| Connecticut Greenstar | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| JPMorgan Chase Bank, N.A. | : | JULY 3, 2013 |

**MOTION FOR USE OF CASH COLLATERAL ON PRELIMINARY AND FINAL BASIS**

Pursuant to 11 U.S.C. § 363(c) and Fed. R. Bankr. P. 4001(b), the debtor and debtor-in-possession, Connecticut Trade Company, Inc. d/b/a Connecticut Greenstar (the "Debtor" or "Greenstar"), hereby moves for the use of cash collateral on a preliminary and final basis ("Motion"). In support thereof, the Debtor respectfully represents as follows:

**INTRODUCTION AND BACKGROUND**

1. On July 3, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate their businesses and manage their properties, affairs and assets as debtor-in-possession.

2. Greenstar is a manufacturer and distributor of patented proprietary door closer technology. The patented technology is not owned by Greenstar, but rather its inventor, Valentin Luca, Greenstar's President. Mr. Luca licenses the technology to Greenstar. One of the major

breakthroughs Mr. Luca patented was a method for allowing exterior household screen or storm doors to be held open with a touch button and to close in a consistent manner, currently known as the "Touch 'n Hold Smooth"® (the "Closer").

3. For some time the Closer has been the premier door closer of its type on the market. All of Greenstar's manufacturing is performed in the Far East, predominantly in Taiwan.

4. Greenstar currently employs four(4) full time employees, including Mr. Luca, as well as one (1) part-time employee.

## DEBTOR'S SECURED CREDITORS

5. Upon information and belief, JPMorgan Chase Bank, N.A. ("Chase" or "Secured Creditor") may claim an interest in the Debtor's "cash collateral" as that term is defined by 11 U.S.C.§ 363(a). The Debtor reserves its right to dispute the amount, extent, validity and priority of such interests in the Debtor's cash collateral.

6. As a result of the Secured Creditor's claims and interests, the Debtor has insufficient unencumbered cash with which to operate and manage its business and attempt to reorganize under Chapter 11 of the Bankruptcy Code.

7. By this motion, the Debtor seeks this Court's authority to use the cash collateral, on a preliminary basis for the period from July 9, 2013 to August 9, 2013 (the "Preliminary Cash Collateral Period"), and on a final basis for period through October 31, 2013 ("Final Cash Collateral Period"). The proposed budget for the preliminary period is appended hereto as **Exhibit A**. Subject to the terms and conditions proposed herein, the Debtor shall be authorized to use the funds encumbered by the Secured Creditor to pay its expenses and operate in the ordering course of business.

8. In consideration for the Debtor's use of cash collateral and to adequately protect the interests of the Secured Creditor in the event that it is determined by this Court that the Secured Creditor possesses a valid, duly perfected, non-avoidable and enforceable pre-petition lien in the Debtor's cash, the Debtor proposes that as adequate protection for the Secured Creditor to protect against the diminution in value of the cash collateral as a result of the Debtor's expenditures, the Secured Creditor be granted replacement and/or substitute lien (the "Adequate Protection Lien"), as provided in 11 U.S.C. § 361(2), in all post-Petition and/or after-acquired assets of the Debtor of the same kind as the assets of the Debtor in which the Secured Creditor had a Lien on the date of the filing of the petitions in the Debtor's bankruptcy cases (the "Petition Date"), and having the same validity, extent and priority as the pre-petition Lien of the Secured Creditor.

9. The Debtor further proposes that, to the extent the Adequate Protection Lien fails to adequately protect the Secured Creditor for the diminution in the value of its Cash Collateral as a result of the Debtor's expenditures, the Secured Creditor should receive an allowed claim with priority over all administrative claims and expenses as and to the extent provided in 11 U.S.C. § 507(b) and subject to the further limitations set forth herein.

10. The Debtor proposes further that the Adequate Protection Lien shall be subject and subordinate in lien, payment and priority to amounts payable by the Debtor: (i) under section 28 U.S.C. § 1930(a)(6); (ii) for taxes owed to governmental agencies including, but not limited to, sales, withholding and income taxes; (iii) for wages, including the wages of Nathan Lawrie and Valentin Luca; and (iv) professional fees and expenses incurred by the Debtor's professionals during the Preliminary and Final Cash Collateral Periods and approved by order of this Court (items (i) through (iv) are collectively the "Carve Out").

11.     The terms and conditions of the proposed use of cash collateral are more fully set forth in proposed orders submitted herewith.

## THE DEBTOR'S NEED FOR USE OF CASH COLALTERAL

12.     The Debtor's bankruptcy filing was precipitated primarily by the conduct of one of its key customers, Larson Manufacturing Co. ("Larson").  On July 6, 2011, Larson "back-charged" the Debtor $964,130.55 for certain charges for which Larson contended the Debtor should reimburse it.  The Debtor contests that it is obligated to reimburse Larson concerning many of the claimed charges.

13.     Thereafter, between July 2011 and January 2012, Larson placed purchase orders for more than $1.3 million worth of Closers with Greenstar.  Greenstar has either delivered or is currently in the process of delivering or manufacturing these Closers.  To date, however, Larson has not paid Greenstar on these purchase orders.

14.     In January 2012, Larson has initiated a lawsuit in the United States District Court for the District of South Dakota styles *Larson Manufacturing Company v. Connecticut Trade Company, et al.*, CIV. No. 12-4011 (the "Larson Action").

15.     As a result of Larson's conduct and the Larson Action, Greenstar was caused to suffer a severe cash-flow restriction and unable to meet obligations to certain creditors, such as Chase.

16.     In order to address its myriad financial issues and ensure the orderly reorganization of its business, Greenstar filed the instant Petition.

17.     The Debtor's need to use the cash is compelling.  The Debtor requires the use of cash collateral to continue to operate and manage its business and reorganize.  The Debtor believes that the entry of an order authorizing the use of cash collateral as described herein and

on the terms and conditions set forth in the proposed orders submitted herewith, will be in the best interests of the Debtor's bankruptcy estate and creditors by maintaining the going concern value of the Debtor's business and furthering the Debtor's efforts to reorganize under Chapter 11 of the Bankruptcy Code.

18. Conversely, the prohibition of the use of the cash would, among other things, force the Debtor cease its operations and prematurely terminate the Debtor's efforts to reorganize for the benefit of its bankruptcy estate and creditors.

**WHEREFORE**, the Debtor requests that this Court enter orders authorizing the Debtor's use of cash collateral on a preliminary and final basis, in accordance with the terms and conditions set forth more fully in the proposed orders, and to grant the Debtor such further relief as is just and equitable.

                THE DEBTOR and DEBTOR-IN-POSSESSION
                CONNECTICUT TRADE COMPANY, INC.
                d/b/a Connecticut Greenstar

                By:    /s/ Jeffrey M. Sklarz
                         Jeffrey M. Sklarz (ct20938)
                         CONVICER, PERCY & GREEN, LLP
                         701 Hebron Avenue
                         Glastonbury, CT 06033
                         (860) 657-9040
                         Fax: (860) 657-9039
                         jsklarz@convicerpercy.com

# EXHIBIT A